IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23CV117-GCM

| | |
|---|---|
| VICTOR CARTER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SIZZLING PLATTER, LLC, )<br>)<br>Defendant. )<br>) | ORDER |

This matter is before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff has filed a Response in opposition and Defendant has filed a Reply. Accordingly, this matter is now ripe for disposition.

## I.  FACTUAL BACKGROUND

Plaintiff, a former general manager at a Wingstop restaurant located in Charlotte, North Carolina, brings this lawsuit in connection with his employment with Defendant and termination therefrom. Plaintiff's Amended Complaint purports to allege four causes of action against Defendant: (1) violation of North Carolina General Statute § 143-422.2(a) (wrongful discharge in violation of public policy); (2) intentional infliction of emotional distress ("IIED"); (3) negligent infliction of emotional distress ("NIED"); and (4) negligent hiring, retention – and/or training.

In his Amended Complaint, Plaintiff, a black male, alleges that shortly after he was hired as a General Manager at Wingstop, a district manager "began sending inappropriate text messages to Plaintiff requesting sexual favors," and Plaintiff "declined" such "advances and requested that" the district manager "stop sending inappropriate messages." (Amd. Compl., ¶¶

14-16). Additionally, Plaintiff alleges that after he "requested that [the district manager] cease all inappropriate messages, [the district manager] began retaliating against Plaintiff by writing Plaintiff up without reason and requiring him to work all day alone without any breaks or assistance," which Plaintiff alleges is against company policy, and threatening "to terminate Plaintiff if he did not comply and then informed Plaintiff that he was not allowed to leave the building during shifts." (*Id.*, ¶¶ 17, 19).

Plaintiff also alleges that the district manager "terminated another minority General Manager, Miguel, after Miguel lodged a complaint against [the district manager]" and that after Miguel's discharge, the district manager "told Plaintiff, 'that is what happens when you mess with me'" and "persisted to deliberately demean and leverage his authority over Plaintiff to deliberately cause Plaintiff mental and emotional harm." (*Id.*, ¶¶ 20, 28). According to the Amended Complaint, Plaintiff "received [the district manager's] threat as a promise to continue to make Plaintiff's life miserable." (*Id.*).

Plaintiff further alleges that the district manager "only treated Defendant's minority employees badly" and that he "treated Plaintiff and other minor [sic] employees disparately worse than white employees," citing in a conclusory manner that, "upon information and belief, White, similarly situated employees were never subjected by [the district manager] to threats, sexual advances, and the other wrongful conduct suffered by Plaintiff . . .." (*Id.*, ¶ 22). To that end, Plaintiff's Amended Complaint avers that, "upon information and belief," the district manager "previously had been allowed by Defendant to treat other minority employees of Defendant poorly," that Defendant "was aware of [the district manager's] conduct towards Plaintiff and other minorities and ratified his behavior by not properly investigating, disciplining and training" the district manager and "allowed [the district manager] to govern arbitrarily and

2

subjectively without regard to its own rules and procedures, even though it was aware of [the district manager's alleged] wrongful conduct." (*Id*., ¶¶ 23-24).

Plaintiff also alleges that the district manager "further threatened to terminate Plaintiff's employment if [Plaintiff] reported [the district manager] for the . . . conduct towards Plaintiff" and that prior to Plaintiff's discharge, Plaintiff advised the district manager "that his W-2s for the year were incorrect" because the W-2s "reflected that taxes were being taken out of [Plaintiff's] pay but this was not reflected on his W-2;" however, the district manager "refused to address Plaintiff's concerns relating to his taxes." (*Id.*, ¶¶ 25-27).

Plaintiff then alleges that on January 22, 2022, he "was unable to get to the restaurant due to a snowstorm that had come through the area the night before" and that he "reached out to [the district manager] and provided photos of the snow on his driveway." (*Id.*, ¶ 29). The district manager "did not respond to Plaintiff's message and instead went and changed the locks at the restaurant," when "Plaintiff arrived later that day he was unable to get into the building," and when "Plaintiff attempted to contact" the district manager, the district manager "ignored Plaintiff." (*Id*., ¶ 30). Plaintiff alleges that "his employment record with Defendant[] was exemplary" and that he was discharged on January 22, 2022. (*Id.*, ¶¶ 31, 32, 35). As a result of the district manager's alleged "wrongful conduct," Plaintiff avers that he "has endured sleepless nights, stress, depression, and anxiety . . . ." (*Id*., ¶ 36). He claims to have "endured and suffered great physical and mental fatigue due to" the general manager's alleged "vengeful conduct." (*Id*., ¶ 18). Additionally, the Amended Complaint alleges that Defendant "knew or should have known about [the district manager's] behavior towards Plaintiff and other minority employees" and that Defendant "did not take appropriate measures to prevent harm to other employees, specifically Plaintiff, after being placed on notice." (*Id*., ¶ 33).

3

## II. DISCUSSION

### A. Standard of Review

Defendant has moved to dismiss each of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations which are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). A claim must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 570).

In evaluating a motion to dismiss, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff" but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffiars.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

### B. Wrongful Discharge in Violation of Public Policy

"North Carolina generally adheres to the employment at-will doctrine, meaning that an employee without a definite term of employment may be discharged for any reason and has no claim for wrongful discharge against his employer." *Baucom v. Cabarrus Eye Ctr.*, *P.A.*, No. 1:06CV00209, 2007 WL 1074663, at *6 (M.D.N.C. Apr. 4, 2007) (citing *Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445, 446 (N.C. 1989)). The employment-at-will doctrine, however, is subject to a public policy exception that provides that an employer cannot terminate an employee-at-will

4

for a reason which is in violation of the public policy of North Carolina. *See Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 168 (N.C. 1992); *Coman*, 381 S.E.2d at 447.

In both his Amended Complaint and his brief, Plaintiff alleges that his public policy discharge claim is based on retaliatory termination because Plaintiff complained to his supervisor, the district manager, about the same district manager's alleged sexual harassment of Plaintiff. (Doc. No. 10, ¶¶ 15-17, 19-22). However, it is well-settled in North Carolina that claims for wrongful discharge in violation of public policy fail where the claim is predicated on retaliation arising from complaints of sexual harassment. *See Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 688 (M.D.N.C. 1997) (dismissing the plaintiff's public policy discharge claim based on her allegations that she was discharged in retaliation for complaints of sexual harassment "because there is no North Carolina state law support for Plaintiff's assertion that a retaliatory discharge arising from complaints of sexual harassment violates the public policy of North Carolina."); *White v. Gannette Co., Inc.*, No. 1:17CV277, 2018 WL 3352978, at *4 (W.D.N.C. May 29, 2018) (North Carolina does not recognize wrongful discharge claims based on retaliation).

To the extent that Plaintiff alleges he has terminated because of his race or sex, he fails to plausibly allege any facts showing that his termination was related to a protected characteristic. Plaintiff merely alleges in a conclusory manner, and with no factual support, that the district manager "only treated Defendant's minority employees badly" and that he "treated Plaintiff and other minor [sic] employees disparately worse than white employees," and "upon information and belief, white, similarly situated employees were never subjected by [the district manager] to threats, sexual advances, and the other wrongful conduct suffered by Plaintiff . . .." (*See* Doc. No. 10, ¶ 22). Similarly, Plaintiff conclusively alleges with no factual support that Defendant's

5

"similarly situated White employees have not been subjected to termination for similar or worse conduct as Plaintiff," purportedly in violation of "Section (a) . . . under N.C.G.S. § 143-422.2(a)." (*Id.*, ¶¶ 38-41).

The Court finds that Plaintiff's wrongful discharge in violation of public policy claim must be dismissed for failure to state a claim upon which relief can be granted.

### C. Intentional Infliction of Emotional Distress

To establish a claim for IIED, a plaintiff must establish "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981). Whether the conduct complained of is sufficiently outrageous as to permit recovery is a question of law. *Simmons v. Chemol Corp.*, 528 S.E.2d 368, 372 (N.C. Ct. App. 2000). To survive a motion to dismiss, the alleged conduct in support of the IIED claim must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.,* 340 S.E.2d 116, 123 (N.C. Ct. App. 1986). North Carolina courts have "set a high threshold for a finding that conduct meets [this] standard." *Dobson v. Harris*, 521 S.E.2d 710, 715 (N.C. Ct. App. 1999), *rev'd in part on other grounds*, 530 S.E.2d 829 (N.C. 2000). To that end, North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context. *Sturdivant v. Arc of Haywood Cnty., Inc.*, 1:18CV123, 2018 WL 3717214, at *5 (W.D.N.C. July 19, 2018) ("North Carolina courts will rarely find that conduct is sufficiently extreme or outrageous in an employment setting.").

Courts in this circuit and state have dismissed IIED claims at the initial pleading stage involving arguably worse employment-related conduct than what Plaintiff alleges in his

Amended Complaint. *See e.g. McClean v. Duke University*, 376 F.Supp.3d 585, 612 (M.D.N.C. 2019) (the court, in granting a motion to dismiss the IIED claim, noted that under "certain circumstances, North Carolina courts have held that sexual assault or crude sexual comments and physical touching over a lengthy period of time constitutes extreme and outrageous conduct" and therefore "[o]utside of [such] sexual misconduct, harassment generally rises to the level of 'extreme and outrageous' only when it involves multiple serious threats and instances of harassment over a years-long period."); *Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 683 (E.D.N.C. 2013) (dismissing claim where plaintiff asserted that supervisor was rude to her, gossiped about her, made her perform non-work related duties, and attempted to interfere with plaintiff's efforts to find another job); *Thomas v. Northern Telecom, Inc.*, 157 F.Supp.2d 627, 635 (M.D.N.C. 2000) (finding the defendant's alleged conduct was not extreme and outrageous where the plaintiff alleged, among other things, the defendant created a hostile work environment and discharged her in retaliation for exercising her rights under Title VII); *Hogan*, 340 S.E.2d at 123 (finding no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains);

Even assuming all of Plaintiff's allegations are true, the Court finds that they fail to rise to the level of "extreme and outrageous" as a matter of law.

### D. Negligent Infliction of Emotional Distress

To state a claim for NIED, a plaintiff must allege (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; (3) the conduct did in fact cause the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecological Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990).

Importantly, it is well-settled that "[a]llegations of intentional conduct . . . even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim." *Horne v. Cumberland Cty. Hosp. Sys. Inc.*, 746 S.E.2d 13, 19 (N.C. Ct. App. 2013) (citing *Sheaffer v. County of Chatham*, 337 F.Supp.2d 709, 734 (M.D.N.C. 2004).

Plaintiff's claim rests entirely on alleged conduct against Plaintiff that is intentional. Indeed, Plaintiff's Amended Complaint expressly admits that "the unlawful employment practices complained of above were intentional." (Doc. No. 10, ¶ 42). Courts consistently dismiss NIED claims where they are based solely on intentional conduct such as harassment, as opposed to negligent conduct. *See Baucom*, 2007 WL 1074663, at *5 ("Plaintiff's conclusory allegations of negligence without alleging facts showing that Defendant engaged in anything other than intentional behavior are insufficient to support a claim for NIED"); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F.Supp.2d 533, 545 (E.D.N.C. 2008) (complaint describing a course of alleged intentional discrimination and retaliation fails to state a NIED claim under North Carolina law); *Mitchell v. Lydall, Inc*., No. 93–1374, 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994) (per curiam) (unpublished) (finding a claim for NIED is subject to dismissal when "the material factual allegations charge nothing but intentional acts"). Moreover, simply re-labeling alleged conduct that is by its very nature intentional as negligent is not sufficient to avoid dismissal. *See Gourley v. Ken Wilson Ford., Inc*., No. 1:06cv00141, 2006 WL 2375455, at *1 (W.D.N.C. Aug. 15, 2006) (where only intentional conduct alleged, except for conclusory boilerplate language regarding "negligence," NIED claim should be dismissed). Because Plaintiff's claims are based upon intentional conduct, his NEID claim must be dismissed.

### E. Negligent Hiring, Retention and/or Training

To establish a claim for negligent supervision, training, or retention, a plaintiff must allege that: (1) an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) prior to the act, the employer knew or had reason to know of the employee's incompetence. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 249-50 (4th Cir. 2000) (citing *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 124 (N.C. Ct. App. 1986)). Without an underlying tort, there can be no negligent supervision and retention claim. *See Bratcher*, 545 F. Supp. 2d at 546-47 (dismissing negligent supervision and retention claim as pleadings stage where the plaintiff's allegations were not sufficient to support existence of underlying tort); *see also Nicholson v. Mecklenburg Cnty.*, No. 3:18-cv-00167, 2018 WL 3076787, at *3 (W.D.N.C. June 21, 2018) (same).

As Plaintiff's IIED and NIED claims fail to state a claim upon which relief can be granted, neither can support the existence of an underlying tort. Plaintiff is further precluded from utilizing his public policy discharge claim as the underlying tort to support this negligent supervision or retention claim. *See McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003) (holding that plaintiff could not base negligent retention or supervision claim on employer's alleged discriminatory or retaliatory conduct because the North Carolina Equal Employment Practices Act does not create a private cause of action for such claims).

In addition to the absence of an underlying tort, Plaintiff's claim fails because he does not plausibly allege that prior to the district manager's alleged treatment of Plaintiff, Defendant knew or had reason to know of the district manager's alleged incompetence. In fact, Plaintiff alleges only that he "declined [the district manager's] advances and directed that he stop sending inappropriate messages" and does not otherwise allege any facts that show he notified any other

9

employees, supervisors, or managers of the district manager's alleged conduct, except for the district manager himself. (See Doc. No. 10, ¶¶ 16, 38). Plaintiff wholly fails to allege any facts to support his conclusory allegations in the Amended Complaint that Defendant "previously . . . allowed" the district manager "to treat other minority employees . . . poorly," that "defendant was aware of Mr. Kirby's conduct towards Plaintiff and other minorities and ratified his behavior by not properly investigating, disciplining and training" the district manager, and that Defendant "allowed" the district manager "to govern arbitrarily and subjectively without regard to its own rules and procedures, even though it was aware of [the] wrongful conduct." (Doc. No. 10, ¶¶ 23 – 24). Critically, Plaintiff fails to allege any facts showing how Defendant was on notice of the district manager's alleged misconduct; he merely sets forth a threadbare recitation of the required element that Defendant "knew or had reason to know," but wholly fails to allege any facts that make the allegation plausible.

Because Plaintiff has failed to allege facts sufficient to plausibly state any of the causes of action set forth in the Amended Complaint,

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is hereby GRANTED.

Signed: July 18, 2023

Graham C. Mullen
United States District Judge